Our next case is National Labor Relations Board v. Bluefield Hospital. Ms. Cassetta, did I pronounce that correctly? Yes, you did. Glad to hear from you. Good afternoon, Your Honors. Katelyn Cassetta, representing Bluefield Regional Medical Center and Greenbrier Valley Medical Center. The medical centers are acute care hospitals located in West Virginia. The hospitals, as part of a consolidated complaint, hereby challenge the underlying ruling of the National Labor Relations Board that the hospitals violated the act by failing to bargain, refusing to bargain with the National Nurses Organizing Committee, who won elections by way of the tally of ballots and the certifications issued by the board, which were conducted in 2012. The hospitals challenge the findings of the board on two primary grounds. The first, and the one that I'd like to focus on during the oral argument today, is the question of the loss of quorum suffered by the National Labor Relations Board during the period of time when the regional director of Region 10 was issuing consent election agreements, overruling the hospital's objections to the elections, and issuing certifications of representative in favor of the union. The second argument, if it is reached by this court, and it would be our argument that no need to reach it is had because of the issue of quorum, is that the regional director abused the authority of the board and abused his discretion in first issuing a notice of hearing on the hospital's objections to the election, and then a short period of time reversing himself without any explanation as to why a notice of hearing was no longer needed. I'd like to start, of course, with the issue of the board's quorum. The quorum issue arises out of two rulings by the Supreme Court. The first is new process steel, which states that the National Labor Relations Board requires a quorum pursuant to the National Labor Relations Act of at least three board members in order for the board to have statutory authority to act. The next case of relevance is Noel Cannon, which found that President Obama's recess appointments of certain members of the board were invalid. The direct result of those two cases was that for a period of time, the National Labor Relations Board was left with only two active members. According to the board's finding and the evidence, it points to Mr. Harrell was approved as regional director before the board lost quorum. Yes, and I do think that that is a question of fact, that is, there's never been a record developed on, but the question of whether a regional board, the board made a finding to that effect and cited evidence in the record for it, and the burden is pretty low in most administrative proceedings. Is there significant evidence, which is not a particularly high threshold? So if we assume that that finding was sufficient and he was appointed before the board lost quorum, what does that do to your case? Respectfully, nothing, Your Honor, and the reason is because the issue is the final plenary authority being exercised by the regional director on behalf of the board when he issued the consent election agreements, when he overruled the objections, and when he issued the certifications. So put another way, even if he were validly appointed by the board, since he was in essence the board exercising their final plenary authority during that period of time, his actions as the principal are insufficient pursuant to Section 3B of the National Labor Relations Act, which requires that the board only act when it has at least three constitutionally appointed members, which it did not. The District of Columbia Circuit apparently disagrees with your view on that. I'm sorry? So the District of Columbia Circuit apparently disagrees with your view on that based on its recent decision in U.S. Health. In U.C. Health, actually, I believe the D.C. Circuit has instructively explained the difference between this case and the case in U.C. Health. As you point out, that decision recently came down from the D.C. Circuit. Prior to that, the D.C. Circuit decided a case called Laurel Bay Health Care. In Laurel Bay Health Care, the board, the facts underlying that illustrate that the board, with four members, which was a valid exercise of delegated to only two members of the board the exercise of the duties of the board. The D.C. Circuit found that to be a statutory violation because two members are not enough to constitute the quorum. Following up on that case more recently... That's what Judge Silverman's dissent relied on, isn't it? Right. And the difference in U.C. Health was that the D.C. Circuit found that the regional director in that case, pursuant to the stipulated election agreement, was not exercising the final plenary authority of the board. That is a key distinction between U.C. Health and the case at bar. And I point you to the appendix to show you precisely what I'm referencing. Well, but you've got a difference though between a stipulated election agreement in those cases and a consent election agreement that you have here. Yes. Those are two very different statutory creations. Yes, they are. But I would submit that it's precisely the difference in those statutory creations that causes the problem for the board with regard to the delegation. The delegation here, and this is on page 17 of the appendix and 20 of the appendix, which are the two consent election agreements. In section 15, the consent election agreements read, finality of the regional director's decision. All rulings and determinations made by the regional director will be final, with the same force and effect in that case as if issued by the board. Now, this distinguishes the case from U.C. Health and puts it squarely in line with Laurel Bay Health Care. Yeah, but your clients agreed to that. Yes, but what we agreed to was to have a validly appointed and validly serving regional director who represented a valid National Labor Relations Board conduct the election. A National Labor Relations Board constituted with only two members is not a valid National Labor Relations Board, and the regional director cannot carry out that authority during that period of time. Well, but if we go back to questions we had before, if we assume that the board's finding is correct, the district regional director in this case was validly appointed prior to the time the board lost its quorum, then the regional director was validly acting. There's dicta in the new process steel case from the Supreme Court that seems to say that's okay. I'd like to address your points, both of them. The first point you made was that if the regional director was validly appointed, that the delegation survives. That would be true were it not for the question of the final plenary authority. If you look at section 3B of the act, it contemplates delegations to the regional directors as having board review. When the National Labor Relations Board made the decision to delegate final plenary authority to the regional directors pursuant to consent election agreements, they consented to have the regional director step in for the board. That is a key distinction, as I've pointed out. The other point I wanted to make related to the footnote you referenced in the new process steel, and I actually have that here because I do believe it's been misconstrued by the board in its arguments in this case. This footnote states, our conclusion that the delegate group ceases to exist once there are no longer three board members to constitute the group does not cast doubt on the prior delegations of authority to non-group members. This is what's relied upon in UC health, such as the regional directors or general counsel. However, the latter implicates a separate question that our decision does not address. Not a question that's decided by the court, but rather one that's explicitly left open by the Supreme Court for determination in a case like this, where you're talking about the regional director exercising final plenary authority on behalf of the board. Now, the board will urge you to apply Chevron deference in this case. Chevron deference is inappropriate. The board misconstrues the standard in its briefs to this court. Chevron deference is the board's only entitled to Chevron deference in situations where the act does not clearly speak. And even the board admits in some of its briefs that the act clearly speaks on the question of this delegation. And this point was addressed in the DC circuit's decision in UC health. There, the DC circuit found that the statute clearly addresses the question of a delegation of final plenary authority. That bumps us back to Laurel Bay Health Care. When there's a delegation of final plenary authority, i.e. someone else is stepping in and carrying out the agent, you know, as the agent of the principal, those principal actions, then they must, the board must be constituted with a quorum during that period of time. If there is a delegation of disciplinary authority, that the loss of the quorum does not take the plenary authority away from the designee. Right. That was the whole basis of that decision. I don't know that I would agree with the whole basis of that decision. I understand and I don't think we dispute the idea that the delegation can survive. The question is, what is the scrutiny that the delegee group must undergo when they issue decisions with the full force of the principal? And I'll point you to a quote, and it comes from paragraph five on page two of my printout of the decision in UC health. Here, they're interpreting the language of section 3b of the statute and they state, the second sentence authorizes the board to delegate to the regional directors the authority to oversee elections, provided that the regional directors decisions always remain subject to board review if the parties dispute them. Again, not true in this case. And the third sentence specifies that the board can only exercise its plenary final authority whether to adjudicate unfair labor practice charges or review the decisions of regional directors and representation elections, whether wielded by the board as a whole or three member delegate panels, if the board has at least three validly appointed members. I don't know how the DC circuit could be any clearer about an exercise of final plenary authority on behalf of the board requiring that the board at that time be validly constituted. That puts us squarely in line with the DC circuit's prior decision in Laurel Bay health and that's why this delegation does not survive the loss of quorum because it's final plenary authority. Well, wouldn't your argument be stronger if in fact this had been a stipulated election agreement instead of a consent election agreement where there had not been a surrender of final authority to the regional directors as opposed to the board because your clients had the opportunity to do that and for whatever reasons they decided that they weren't going to do that and they were going to give up that right? We gave up the right to challenge the findings of the regional director if the regional director was a proper congressional actor. There was there and UC Health also actually addresses this point. They say on the question of whether or not there's a waiver in terms of the consent election agreement, you can't go that far unless there's an express waiver. I would submit to this court that that raises an entirely separate question of whether or not parties can contract around congressional statute that says this federal agency cannot act without three valid members. I don't think that the parties could do that, but even if they could, the DC circuit has already addressed this point and said, unless it's very express, we don't reach that question. Here, looking at these consent election agreements contained in the appendix, there is no evidence whatsoever to support the idea that the hospitals wanted to give up the proper board. That was an assumption underlying any action in compliance with the National Labor Relations Board is that they had the authority to act. I'd like to return quickly to Chevron deference because I do know that the board will rely upon it in this case. I don't think the board is entitled to it because the act here is very clear. As stated in UC Health, 3B does not allow for the delegation of final plenary authority when there are less than three members of the board. However, even if the board is able to convince you to examine this case and this issue at the second step of Chevron deference, the agency's interpretation of its statute here is not a permissible interpretation. Not only because the statute is clear, which means we should never even get to the second step, but also because it frankly logically makes no sense. How could an agent, i.e. the regional directors, exercise the final authority of the principal when the principal is without any authority to act on basic agency principles? That doesn't make any sense and it must be rejected. Furthermore, the congressional record and legislative history here very clearly illustrate that the intent of the delegation of authority by the board to the regional directors was always to be subject to the review of the board. Any suggestion to the contrary that the regional directors have more authority and more power than the board itself defies the hierarchical logic of the agency. For those reasons, the board is not entitled to Chevron deference. First, they is analyzed. Even if we analyze under that theory, the board's interpretation of the act is impermissible and must be struck down. I see that my time is concluding. I want to make mention of the fact that if for any reason the quorum argument is not persuasive, and I believe it very clearly is, there are other grounds upon which the regional directors' authority have been questioned by the approval of Mr. Harrell's appointment as regional director took place. Another, as recently discussed in Southwest General Incorporated before the D.C. Circuit, is the question of the authority of the general counsel during the same period of time. However, again, we submit that the very concerning issue of loss of quorum in the regional director's authority to act controls this case, that this vacate those consent election agreements as unauthorized exercises of authority during a time when the regional director had no authority to act. Finally, even if this court does not, for some reason, find that the board and, by dint, the regional directors were out without authority to act, there remains the question of the hospital's objections, which were scheduled by the regional director for hearing, were said by the regional director to raise substantial questions of fact that could have affected the free and fair election in these cases, and then a mere six days later, with no reasoned analysis, the regional director reversed himself on that question, and did so on the grounds that the hospital had not submitted evidence in support of the objections, but I would note that that deadline had passed before the first notice of somehow this case survives the quorum issue. There are serious problems with the arbitrary and capricious exercise of authority by the regional director. For all these reasons, this court must vacate the board's decision in order and vacate the underlying certification of representative. I'm going to ask you one more question, make sure I haven't missed something in your briefing. In footnote five of the board's decision, they find that the respondents, your clients, assert that acting general counsel Solomon was not validly designated for that position, and therefore lacked the authority to prosecute the consolidated complaint. That was the issue with Southwest General. I don't see in any of your pleadings that you have raised that issue. I believe we have raised that issue, the question of general counsel Solomon's authority, I believe that's in our briefing. I do think, I know, but you haven't challenged the authority of the board to bring the complaint. No. Based on the Federal Vacancy Reform Act. No. Our concern is with those underlying actions. Thank you. Mr. Yost. May it please the court, my name is Micah Yost from the National Labor Relations Board. I'd like to begin with regard to the 1961 delegation of the board's authority under section 3B and its reasonable interpretation of that statute. I believe I heard Sol say that they do not dispute that the delegation can in fact survive the loss of a board quorum, and that the question is only the standard of review. But the standard of review in this case was set by agreement between parties. There's no basis for the employer to come back and challenge that after the fact. I'd also like to point out that contrary to counsel's arguments, there is no basis for distinguishing UC Health from this case. In both cases, the parties had the right to plenary final board review of the RD's decision. And in both cases, they voluntarily relinquished that right. In UC Health, the employer relinquished that right by not objecting to the decision of the regional director. Here, the hospitals relinquished that right by agreeing to consent election agreements that permitted the decision of the RD to become final. Beyond making those initial points, I want to focus on three primary issues this afternoon. The first is the employer's overall waiver of all of their arguments. The second goes back to the 1961 delegation and the board's reasonable interpretation of section 3B. And third, the inadequately briefed issue of the acting general counsel's appointment under the Federal Vacancies Reform Act, which the court should not reach. Beginning with waiver, contrary to what the company has argued, waiver does apply and can apply in this sort of case where the composition of the agency is being challenged, contrary to what the D.C. Circuit recently decided in UC Health. The cases we cite in our brief include RELCO in our 28-J letter, D.R. Horton from the Eighth and Fifth Circuits respectively, the Newton New Haven case from the Second Circuit, and intercollegiate Brogst's system from the D.C. Circuit decades ago all establish that a party can waive a or any other sort of challenge to the authority of the decision-making entity. Our basic point is... What about the fact that the board didn't dismiss appellant's arguments as waived in its decision below and you're arguing it now? Your Honor, the board referred to the subtle principle that issues not raised in the R case cannot be dismissed. That well-established rule implicates the entire line of case law that we've cited, including cases like this court's decision in the Sandpiper Convalescent Center case. An employer stipulated to joint employer status and failed to raise any challenge to that in the R case and subsequently was precluded from raising that issue in the C case as a result. The D.C. Circuit didn't seem to find that argument persuasive in the D.C. Health case. That's right. The D.C. Circuit disagreed and I can only point to the authority that we've already noted, which clearly establishes that waiver can apply. In this kind of circumstance where that waiver is particularly appropriate and the court should not exercise any sort of discretion to excuse that waiver, particularly where the ultimate ULP case was issued by an indisputably valid board and the R proceedings took place with the full consent of the hospitals, to the extent that the hospitals would attempt to argue some sort of equitable ground that the objections they raised have never been adjudicated on their merits, we would note again that the hospitals chose not to follow well-established board rules and procedure that would have allowed them to preserve those objections when they deliberately chose not to introduce an offer of proof. To turn to the Section 3B interpretation, which the board relies on here for the proposition that the 1961 delegation continues in effect, that interpretation is entitled to Chevron deference as the court recognized in U.C. Health because it's a matter as to which statute is silent. The question of what happens to a delegation to a lesser officer of the NLRB when a quorum lapses and the board's interpretation on that issue, which the statute does not speak to, is a reasonable one. It's reasonable fundamentally because it allows of a question concerning representation from a regional director if they choose to. At the same time, it ensures that if parties don't choose that path, if they prefer to reserve the right of board review in the R case, they may do so as well. That is an interpretation that is not only reasonable for those practical reasons, it's also fully consistent with the statutory intent behind the delegation itself in 1959 and with Congress's intent throughout the initial enactment and subsequent amendments to the National Labor Relations Act. In every instance, Congress was fundamentally concerned with delay in representation cases and ensuring that parties have the ability to promptly get to an election. Now, delay is regrettable in any sort of proceeding. Here, it's already been three years since these RNs voted for union representation, but delay is as a problem that warranted Congress's consideration in R case proceedings like this, because as the Supreme Court noted in the American Federation of Labor case from 1940, which we cite to page 37 of our brief, Congress recognized that where parties were not able to get to a final resolution of an election in a reasonable time, industrial unrest was the result because unions would have to resort to recognitional strikes and would have to otherwise disrupt the production in this country in order to obtain recognition. Having prompt elections where parties can get a final resolution goes to a fundamental purpose behind the act, and it's reasonable for the board to interpret its delegation and the language authorizing that delegation in a way that makes that possible. I'd also like to note that contrary to the claim that somehow the RD is acting as the full board and taking on the full mantle of the board, the regional director in this circumstance is taking on specific duties which Congress enabled the board to delegate. That delegation has continued in effect since 1961 through various periods of a quorum loss, and there's no reason for concluding that that delegation would lapse as a result of a membership requirement for action by the full board as the Supreme Court recognized in the new process decision. That fundamental principle that the delegation can continue, which I believe opposing counsel has conceded, is also discussed in the 10-J cases we Healthbridge case, the HTH, White Cell, and El Paso disposal. All of those, as opposing counsel noted in their brief, and as we agree, all of those dealt with the 10-J authority of the general counsel, and the general counsel, to be sure, does occupy a different position within the board's structure than the regional directors. But to the extent that anyone would claim that a delegation cannot be exercised if the party that made the delegation can't itself exercise it with a full quorum, those cases refute that notion, and those cases reject the agency principles that the hospitals fundamentally rely on. Third, I'd like to touch briefly on the authority of the acting general counsel. As we noted in our brief, the only argument that the hospitals raised with regard to the acting general counsel's authority, and ultimately his authority to appoint or to be involved in the appointment of regional director Harrell, the only argument that they raised was that section 3D of the act provided the exclusive mechanism for making an appointment of an acting general counsel or a selection of that individual. We explained why that argument is wrong. The board rejected that argument with reference to the Benjamin R. Realty and Huntington case. That was the only argument that was made to the board. The board can appoint a regional director without the recommendation of the acting general counsel. I think that's correct, your honor. As a matter of the statute, section 4 of the statute gives authority to the board to make the appointment. The board here made that appointment by the last act required of it on December 22, 2011. To the extent that the court might have any further concerns, well, first of all, of course, the court should, for that reason, should consider any sort of reliance on Southwest General and the distinct rationale in that case to be forfeited, particularly given the significant impact that this issue has across agencies of the federal government. If the court does have any further concerns, it should order supplemental briefing before issuing any further ruling. I'd like to turn briefly back to the merits of the case. Which, like all the other arguments here, have been forfeited or abandoned at various stages. In this case, they were initially waived by the simple fact that the parties agreed that the regional director would make a final determination. After agreeing that the regional director would make a final determination, the hospitals attempted to turn around and say that, no, they had a prior oral ad hoc agreement which would instead authorize an arbitrator to resolve those issues. It's not clear to me what remedy the hospitals seek for what they see as some sort of violation of their rights here. If the case were sent back, presumably, they would once again refuse to submit the evidence, as they have refused to submit all along, and the board would refuse to defer under the well-established principles that it noted. What we're really left with is a failure on their part to preserve their objections by making a basic offer of proof which the board's regulations require under rules that are strictly enforced. To the extent that they claim that the regional director shifted course for an unexplained reason in rejecting their objections, the regional director did explain why the objections were being rejected at Joint Appendix 34 and 36. The reason was that the employer had failed to submit evidence. The regional director cited the Starr video case for the proposition that the time limits for doing so are strictly construed. We would acknowledge that it's not clear from the record why the first report was issued that initially set a hearing. It's equally clear that if the regional director had proceeded to that hearing without having gotten any evidence submitted from the hospitals, that would have been reversible error under the public storage case that we cited, which shows that the regional director has to receive the evidence within the time limit specified or grant an extension of time that is properly requested. Where a party instead simply refuses to submit its evidence, it has effectively abandoned its objections, which is what happened here. So we would again ask that the court first of all consider the arguments here to be waived, second of all consider the interpretation of the board of Section 3b to be reasonable as effectuating Congress's intent on a matter as to which the statute is silent, and we would finally request that if any further issues remain as to the acting general counsel, the court should first of all find forfeiture and second of all order supplemental briefing before making any sort of determination on the merits of that argument. So unless the court has any further questions for the reasons that I've explained today and for the reasons specified in our brief, we would ask for enforcement in full. All right, thank you very much. Mr. Seta, you have some time left to rebuttal. On rebuttal, I'd like to start by addressing the question of waiver. As Judge Thacker points out, this is a post hoc rationalization by the board's appellate attorneys. It's ironic, I suppose, but they've waived their claim of waiver in this case because it was not raised by the board in footnote 5. Furthermore, it is clear from the D.C. Circuit's decision in UC Health that the question here about the agency's authority to act is not waivable. It is not waived. Furthermore, UC Health also addresses the board's contention that by signing the consent election agreement, the hospital somehow waived their right to object to a statutorily unlawful board via the regional director deciding this case and issuing certification. I point you to section 2a of the UC Health decision where the D.C. Circuit states the board asserts that UC Health may not challenge the regional director's authority because the company voluntarily entered into stipulated election agreement. Because UC Health explicitly agreed to the terms of the election, the board insists that the company cannot challenge one of those terms now. The D.C. Circuit states we reject this argument. UC Health did not expressly give up the challenge it brings now when it executed the agreement. It merely signed a form agreement providing that the board's regulations would govern the election. That is identical to the circumstances at play here. For that reason, there is no waiver. The D.C. Circuit was right and the law is clear that waiver, even if it had been properly raised by the board and it was not, would not apply under these facts. The board's argument asks you to ignore the difference in the type of authority being carried out by the regional director in this case. The D.C. Circuit could not have been clearer in UC Health and Laurel Bay in stating that the National Labor Relations Act, as written, the statute itself in Section 3B, makes clear that no delegee group can act with final plenary authority if there is not a validly appointed quorum on the board. The board can cite cases on the very pertinent fact that what the regional director did here is step in. With regard to this case, they were the final actor. They stepped into the shoes of the board. That is, ironically, the board's whole argument as to why this court cannot review the question of the hospital's objections. They cannot have it both ways. If the regional director exercised final authority, and they did, in issuing this consent election agreement and overruling the objections and issuing the certification, the regional director acted without authority, and that must be struck down and vacated by this court. Thank you. Thank you very much.
judges: G. Steven Agee, Stephanie D. Thacker, Henry E. Hudson